UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

WILLIAM FIGUEROA,

                 Plaintiff,             13 Cv. 4309 (JGK)

       - against -               MEMORANDUM OPINION &
                                           ORDER

EDMUND PUERSCHNER AND FLORENCE
SEARGENT,

                 Defendants.
_____

JOHN G. KOELTL, District Judge:

    The pro se plaintiff, William Figueroa, was an inmate at
Sullivan Correctional Facility ("Sullivan").  He brings this
action pursuant to 42 U.S.C. § 1983, alleging that Correction
Officer Edmund Puerschner assaulted him and that Nurse Florence
Seargent was deliberately indifferent to his serious medical
needs.  The defendants have moved for summary judgment pursuant
to Rule 56 of the Federal Rules of Civil Procedure.

    The Court has jurisdiction under 28 U.S.C. § 1331.  For the
reasons explained below, the defendants' motion is **granted**.

I.

    The standard for granting summary judgment is well
established.  "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs.,

1

Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v.

2

TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

When, as here, a pro se plaintiff opposes summary judgment, the Court must afford the plaintiff "special solicitude" in the construction of the pleadings and the motions and in the enforcement of procedural rules.  See Tracy v. Freshwater, 623 F.3d 90, 100-03 (2d Cir. 2010).  But this solicitude does not "relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).

Finally, summary judgment is appropriate when video evidence shows that the challenged use of force was not excessive.  See, e.g., Scott v. Harris, 550 U.S. 372, 380-81 (2007) (Fourth Amendment excessive force claim); McKinney v. Dzurenda, 555 F. App'x 110, 11 (2d Cir. 2014) (excessive force claim).

## II.

The following facts are undisputed unless otherwise noted.

### A.

At all relevant times, the plaintiff was an inmate incarcerated in the Special Housing Unit at Sullivan.  Figueroa Dep. Tr. at 7.  At all relevant times, Officer Puerschner and Nurse Seargent worked at Sullivan.  See Puerschner Decl. ¶ 1; Seargent Decl. ¶ 1.

At approximately 11:23 a.m. on April 11, 2013, Officer Puerschner found liquid on the floor outside the plaintiff's cell door.  Figueroa Dep. Tr. at 16; Puerschner Decl. ¶ 4.  Officer Puerschner notified his supervisors.  Sargent Phelps then recommended and Acting Deputy Superintendent of Security Russo authorized the placement of a plastic cell shield on the bottom of Figueroa's cell door.  Def.'s Ex. A.

A video recording shows Officer Puerschner returning, with two other officers, to Figueroa's cell with the shield.  Def.'s Ex. B, at 11:25 a.m.  From 11:25 a.m. to 11:33 a.m., the video shows Officer Puerschner and the two other officers installing the cell shield.  Officer Puerschner held the cell shield in place while the other officers secured it.  Id. at 11:25 a.m. to 11:33 a.m.; see also Puerschner Decl. ¶¶ 8-9.

The video shows Figueroa punching the cell shield while the officers installed it.  See Def.'s Ex. B, at 11:25 a.m. to 11:27

a.m.  Figueroa, who is deaf, explained: "I was signing to them, 'No, no, no.  Please listen to me,' but they didn't want to listen.  I'm signing, 'No, no, no,' through it and that's when they pushed back with the shield and hurt my thumb."  Figueroa Dep. Tr. at 21.  But the video of the incident shows the cell shield being hit rather violently from within the plaintiff's cell.  <u>See</u> Def.'s Ex. B, at 11:25 a.m. to 11:27 a.m.

**B.**

Around noon that same day, Figueroa was taken to the medical clinic at Sullivan, and his thumb was x-rayed.  Figueroa Dep. Tr. at 28-29: Def.'s Ex. D.  The x-ray report states that the plaintiff suffered a nondisplaced fracture on the tip of his thumb.  Def.'s Ex. D.

That night, at approximately 7:00 p.m., Nurse Seargent made sick rounds in the Special Housing Unit at Sullivan.  Seargent Decl. ¶ 4.  In her declaration, she states that "I was made aware that plaintiff had sustained a thumb injury earlier in the day and was seen in the medical unit."  <u>Id.</u> ¶ 5.  Nurse Seargent declared that she "gave plaintiff two packs of Ibuprofen for hand pain.  I passed the medication to plaintiff through the hatch on his cell door.  Plaintiff began punching the hatch door and started yelling.  I was unable to continue the sick call due to his behavior."  <u>Id.</u> ¶ 6.  Nurse Seargent reported this incident and the medication provided in an "Ambulatory Health

Record Progress Note." Def.'s Ex. D.  The defendants
represented that there is no video of this incident.

    The plaintiff disputes that he received Ibuprofen from
Nurse Seargent.  But his description of the sick call is less
than clear.  He testified that Nurse Seargent "wasn't paying any
attention.  Arguing with another CO. . . .  And they left."
Figueroa Dep. Tr. at 38.  He testified that "[s]he didn't know
that my thumb was injured," id. at 39, but also testified that
Nurse Seargent saw his thumb that night.  Id. at 68.  He
testified that he did not yell at Nurse Seargent, id. at 40, but
admitted to punching his cell door.  Id. at 41.  And the
plaintiff testified that he tried "many times" to be seen by a
doctor or nurse, id. at 63, but also stated that he did not try
to see a nurse on April 12 "because [he] was very upset and
frustrated."  Id. at 65.

    The plaintiff testified that the medical staff later
removed his thumbnail and "put like some ointment like Vaseline"
on his thumb.  Id. at 60.  He claims that the pain subsided a
week and a half after the injury.  Id. 60-61.

c.

    The plaintiff delivered his complaint to prison authorities
on June 14, 2013, and it was received by this Court on June 20,
2013.  The defendants moved for summary judgment in July 2014.
The defendants provided the plaintiff with a "Notice to Pro Se

6

Litigant" as required by Local Rule 56.2, which sets out the responsibilities of a pro se plaintiff in responding to a motion for summary judgment.

In a letter to the Court dated September 23, 2014, the plaintiff asked the Court to "rely on his complaint and deposition as a reply to the defendant's motion for summary judgment."[1]

## IV.

### A.

The plaintiff claims that Officer Puerschner used excessive force when installing the cell shield.  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.  A claim of excessive force requires a plaintiff to satisfy both an objective and a subjective prong.  See, e.g., Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "[C]ourts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

---

[1]   Summary judgment may also be appropriate because the plaintiff failed to respond to the defendants' motion.  See In re Towers Fin. Corp. Noteholders Litig., 996 F. Supp. 266, 273-74 (S.D.N.Y. 1998) (collecting cases) (Report and Recommendation adopted by the district court).

The objective prong "focuses on the harm done, in light of contemporary standards of decency." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (citation and internal quotation marks omitted). "[W]hen prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" Id. at 268-69 (quoting Hudson, 503 U.S. at 9).

The subjective prong "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." Id. at 268 (citation and internal quotation marks omitted). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citation and internal quotation marks omitted); see also Floyd v. Bailey, No. 10cv7794, 2013 WL 929376, at *6 (S.D.N.Y. Mar. 12, 2013).

The "force" used by Officer Puerschner was not excessive, and there is no evidence that he acted with malice. The plaintiff does not dispute that Officer Puerschner followed New York State Department of Corrections and Community Supervision procedures when he requested permission install the cell shied.

See N.Y. Comp. Codes R. & Regs. tit. 7, § 305.6.  Figueroa instead insists that Officer Puerschner intentionally smashed the plaintiff's thumb when he installed the cell shield.

However, the video of the incident show that Officer Puerschner held the cell shield in place while two other officers installed it.  During the installation, the plaintiff repeatedly hit the shield.  Nothing in the video shows Officer Puerschner acting maliciously.  The plaintiff hurt his thumb because he hit the cell shield and his finger became wedged between the shield and the door.  Indeed, the plaintiff admits that he put his hands on the cell bars when the officers were installing the shield.  Figueroa Dep. Tr. at 18-19.

Moreover, the "force was applied in a good faith effort to maintain or restore discipline."  Whitley v. Albers, 475 U.S. 312, 320 (1986) (internal quotation marks omitted) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.)).  Water appeared to be coming from the plaintiff's cell, and Officer Puerschner received permission to install the cell shield.  And holding the cell shield in place—while the plaintiff punched it—was a "good faith effort" to prevent the plaintiff from disrupting the installation of the shield.  No reasonable jury could find that Officer Puerschner acted maliciously or used excessive force.

Accordingly, Officer Puerschner's motion for summary judgment on the excessive force claim is **granted**.

### B.

The plaintiff next claims that Nurse Seargent was deliberately indifferent to his thumb injury on April 11, 2013. Prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976).

Like the excessive force claim, this claim includes both a subjective component (deliberate indifference) and an objective component (a serious medical need). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). A medical need is sufficiently serious "where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Chance, 143 F.3d at 702). The plaintiff's claim fails on both fronts.

First, there is no evidence that Nurse Seargent acted with deliberate indifference.  The plaintiff immediately received an x-ray after the injury.  The plaintiff does not identify what other medical treatment—besides a painkiller—he should have received when Nurse Seargent made a sick call on April 11. Nurse Seargent declared—and her contemporaneous notes substantiate—that she gave the defendant Ibuprofen, but she could not provide further treatment because the defendant was yelling and pounding the cell door.  Seargent Decl. ¶ 6; Def.'s Ex. D.

The plaintiff insists that Nurse Seargent did not give him any Ibuprofen because she "didn't know that [his] thumb was injured."  Figueroa Dep. Tr. at 39.  The plaintiff's testimony does not support an Eighth Amendment claim because if—as the plaintiff alleges—Nurse Seargent had no knowledge of the plaintiff's injury, she did not act with deliberate indifference.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (requiring a "state of mind that is the equivalent of criminal recklessness" (internal quotation marks omitted)).

Second, the plaintiff's injury was not sufficiently serious.  The plaintiff had a nondisplaced fracture on the tip of his thumb.  The plaintiff testified that he was in pain for "maybe a week and a half," lost his thumbnail, and experienced swelling.  Figueroa Dep. Tr. at 60-61.  "Courts in this Circuit,

11

as well as in other jurisdictions, consistently have found that a broken finger is not sufficiently serious as a matter of law." Colon v. City of New York, No. 8cv3142, 2009 WL 1424169, at *6 (S.D.N.Y. May 21, 2009) (collecting cases).  In the rare case, courts have found a broken finger sufficiently serious when the plaintiff alleges something more, such as "an allegation that surgery was required due to the lack of proper initial treatment of an injured finger."  Leacock v. N.Y.C. Health Hosp. Corp., No. 03cv5440, 2005 WL 1027152, at *5 n.2 (S.D.N.Y. May 4, 2005). There is no such allegation here.

Accordingly, Nurse Seargent's motion for summary judgment on the deliberate indifference claim is **granted**.

CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, they are either moot or without merit.  The defendants' motion for summary judgment is **granted**.  The Clerk is directed to enter judgment dismissing this case, to close all pending motions, and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         February 5, 2015                _____/s/_____
                                              **John G. Koeltl**
                                     **United States District Judge**